IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| BRANDEN COLLINS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO. 2:23-cv-00231-RAH |
| | ) |
| ALABAMA STATE UNIVERSITY, | ) |
| | ) |
| | ) |
| Defendant. | ) |

## **ORDER**

Plaintiff Branden Collins filed this pro se action against Alabama State University for disability discrimination and retaliation under Title VII of the Civil Rights Act of 1964 and the American with Disabilities Act ("ADA").

On June 28, 2024, Defendant moved for summary judgment. On February 3, 2025, the Magistrate Judge recommended that Defendant's summary judgment motion be granted. In his Recommendation, the Magistrate Judge found that (1) disability is not a protected characteristic under Title VII; (2) Plaintiff's resignation and June 30, 2020, written reprimand did not constitute actionable adverse employment actions; (3) Plaintiff failed to provide sufficient evidence that his disability was a but-for cause of his September 2, 2020, schedule change; and (4) Plaintiff did not sufficiently establish that Defendant's knowledge of his child's disability was a determining factor behind the schedule change for purposes of an association discrimination claim.

On February 18, 2025, Plaintiff filed Objections to the Recommendation. The Court has independently reviewed the file and reviewed, *de novo*, the Objections and

Recommendation. *See* 28 U.S.C. § 636(b). Upon this Court's review and consideration of the arguments set forth in the Objections, and for the reasons below, the Court agrees with the Magistrate Judge's findings and analysis.

## STANDARD OF REVIEW

### A.   *De Novo* Review of the Recommendation

When a party objects to a Magistrate Judge's Report and Recommendation, the district court must review the disputed portions *de novo.* 28 U.S.C. § 636(b)(1). The district court "may accept, reject, or modify the recommended disposition; receive further evidence; or resubmit the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3). *De novo* review requires that the district court independently consider factual issues based on the record. *Jeffrey S. ex rel. Ernest S. v. State Bd. of Educ.*, 896 F.2d 507, 513 (11th Cir. 1990); *see also United States v. Opie*, 347 F. App'x 495, 499 n.1 (11th Cir. 2009) (per curiam). However, objections to the Magistrate Judge's Report and Recommendation must be sufficiently specific to warrant *de novo* review. *See Macort v. Prem, Inc.*, 208 F. App'x 781, 784 (11th Cir. 2006) (per curiam) (citation omitted). Otherwise, a Report and Recommendation is reviewed for clear error. *Id.* (citing *Diamond v. Colonial Life & Accident Ins.*, 416 F.3d 310, 315 (4th Cir. 2005)).

### B.   **Summary Judgment Standard**

"Summary judgment is proper if the evidence shows 'that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Hornsby-Culpepper v. Ware*, 906 F.3d 1302, 1311 (11th Cir. 2018) (quoting Fed. R. Civ. P. 56(a)). "[A] court generally must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment." *Fla. Int'l Univ. Bd. of Trs. v. Fla. Nat'l Univ., Inc.*, 830 F.3d 1242, 1252 (11th Cir. 2016) (internal quotation marks and citation omitted).

However, "conclusory allegations without specific supporting facts have no probative value." *Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 924–25 (11th Cir. 2018). If the record, taken as a whole, "could not lead a rational trier of fact to find for the non-moving party," then there is no genuine dispute as to any material fact. *Hornsby-Culpepper*, 906 F.3d at 1311 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The movant bears the initial burden of demonstrating that there is no genuine dispute as to any material fact, and the movant must identify the portions of the record which support this proposition. *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The movant may carry "this burden by demonstrating that the nonmoving party has failed to present sufficient evidence to support an essential element of the case." *Id.* The burden then shifts to the non-moving party to establish, by going beyond the pleadings, that a genuine issue of material fact exists. *Id.* at 1311–12.

A genuine dispute of material fact exists when the plaintiff produces evidence that would allow a reasonable factfinder to return a verdict in his favor such that summary judgment is not warranted. *See Greenberg v. BellSouth Telecomms., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (per curiam) (citation omitted). Only disputes involving material facts are relevant, and materiality is determined by the substantive law applicable. *Id.*

## DISCUSSION

### A. Title VII Claim

In total, Plaintiff asserts thirteen Objections. None of them have merit.

Under Title VII, an employer is prohibited from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). To prevail on a Title VII claim, a plaintiff may either present evidence that satisfies the burden-shifting framework in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973), or demonstrate "a convincing mosaic of circumstantial evidence that warrants an inference of intentional discrimination," *Lewis v. City of Union City*, 918 F.3d 1213, 1220 n.6 (11th Cir. 2019) (en banc) (internal quotation marks and citation omitted).

As an initial matter, Plaintiff does not object to the Magistrate Judge's finding that Defendant is entitled to summary judgment on Plaintiff's Title VII claim because "disability is not a protected characteristic covered by Title VII." (Doc. 29 at 8.) The Magistrate Judge's determination that disability is not a protected characteristic under Title VII is therefore not clearly erroneous. *See Branscomb v. Sec'y of Navy*, 461 F. App'x 901, 906 (11th Cir. 2012) (per curiam) (stating that disability "is not a characteristic enumerated in Title VII"). Further, because Plaintiff failed to object to the finding, he "waives the right to challenge that finding on appeal" because he "was informed of the time for objecting and the consequences on appeal for failing to object." *Wilson v. Sec'y, Fla. Dep't of Corr.*, No. 20-13558, 2022 WL 17176707, at *1 (11th Cir. 2022) (per curiam) (citation omitted); (*see* doc. 29 at 19–20). Accordingly, the Recommendation is adopted insofar as the Magistrate Judge recommended dismissal of Plaintiff's Title VII claim.

4

**B.     ADA Claims**

  **1.     Plaintiff's Resignation**

Plaintiff objects to the Magistrate Judge's finding that his "resignation was voluntary and did not constitute an adverse employment action for purposes of establishing a prima facie claim of discrimination or retaliation under the ADA." (Doc. 29 at 13) (cleaned up).  Plaintiff argues that his resignation constitutes a constructive discharge because the reprimand, schedule change, and recommendation for termination were "a series of retaliatory and adverse actions." (Doc. 30 at 2.)

Under 42 U.S.C. § 12112(a), an employer may not "discriminate against a qualified individual on the basis of disability."  To establish a discrimination claim under the ADA, a plaintiff must show (1) he has a disability; (2) he is a qualified individual under the ADA; and (3) the employer discriminated against him "on the basis of disability."  *Akridge v. Alfa Ins. Cos.*, 93 F.4th 1181, 1191 (11th Cir. 2024) (citations omitted).  To establish a retaliation claim under the ADA, a plaintiff must show that (1) he engaged in a statutorily protected expression, (2) he suffered an adverse employment action, and (3) there was a causal link between the two. *Frazier-White v. Gee*, 818 F.3d 1249, 1258 (11th Cir. 2016) (citing *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1260 (11th Cir. 2001)).

Like Title VII claims, ADA disparate treatment and retaliation claims are analyzed under the *McDonnell Douglas* burden-shifting and convincing mosaic frameworks.  *Akridge*, 93 F.4th at 1191, 1197 (citing *Todd v. Fayette Cnty. Sch. Dist.*, 998 F.3d 1203, 1215 (11th Cir. 2021); *Lewis v. City of Union City*, 934 F.3d 1169, 1185 (11th Cir. 2019) [hereinafter *Lewis II*]); *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1287 (11th Cir. 1997).

First, Plaintiff's Complaint and Charge of Discrimination reference termination only, and never mention a resignation or constructive discharge.  As

such, Plaintiff never formally asserted an involuntary resignation or constructive discharge claim, and the Court will not permit Plaintiff to amend or assert new claims in opposition to summary judgment.[1] *See Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) (per curiam) (citation omitted); *see also Duble v. FedEx Ground Package Sys.*, 572 F. App'x 889, 892 (11th Cir. 2014) (per curiam) (citation omitted) (stating that "[p]rior to filing an action in federal court for discrimination or retaliation, a plaintiff must file an administrative charge with the EEOC").

But even if Plaintiff had asserted a claim for involuntary resignation or constructive discharge in the context of his separation from Defendant, Plaintiff still cannot proceed. "[E]mployee resignations are presumed to be voluntary," *Hargray v. City of Hallandale*, 57 F.3d 1560, 1568 (11th Cir. 1995) (per curiam) (citations omitted), and generally do not constitute adverse employment actions, *Harrison v. Sheriff, Holmes Cnty. Fla.*, No. 22-14288, 2024 WL 449374, at *4 n.7 (11th Cir. Feb. 6, 2024) (per curiam) (citing *Hargray*, 57 F.3d at 1570). "[A] resignation is not voluntary if it was a constructive discharge forced by an employer's duress or misrepresentation of a material fact." *Id.* (citing *Hargray*, 57 F.3d at 1567). No evidence of duress or misrepresentation is present in the record.[2]

---

[1] The Court overrules Plaintiff's Objection related to a hostile work environment claim, (doc. 30 at 6), for the same reason. Both the Complaint and Charge of Discrimination are devoid of any reference to a hostile work environment. Further, even if Plaintiff properly asserted an allegation of hostile work environment, the Court finds that Plaintiff has failed to establish that Defendant engaged in "'repeated conduct' such as 'discriminatory intimidation, ridicule, and insult.'" *McCann v. Tillman*, 526 F.3d 1370, 1378 (11th Cir. 2008) (cleaned up) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).

[2] Neither is there any evidence that "working conditions [were] so intolerable that a reasonable person in the employee's position would have felt compelled to resign." *Hicks v. City of Tuscaloosa*, 870 F.3d 1253, 1258 (11th Cir. 2017) (quoting *Green v. Brennan*, 578 U.S. 547, 555 (2016)).

Defendant's recommendation for termination letter dated October 29, 2020, informed Plaintiff that he was "entitled to due process before the Chief of Staff or his designee" and that "a written request for a hearing must be submitted . . . within five . . . working days." (Doc. 19-8 at 2.) While the letter only provided for five days by which to request a hearing, Plaintiff resigned two days later on October 31, 2020, and tendered his resignation as "effective immediately." (Doc. 19-9.) Instead of choosing to "stand pat and fight," *Hargray*, 57 F.3d at 1568 (citation omitted), Plaintiff resigned. *See also Williams v. Ala. Dep't of Corr.*, 649 F. App'x 925, 929 (11th Cir. 2016) (per curiam) ("The evidence established that [the plaintiff] had an option other than resignation. He was offered a pre-dismissal hearing in which he could have presented information to explain why the Department should not terminate his employment."). And voluntarily so.

Accordingly, Plaintiff's Objection is overruled, and the Recommendation is adopted in concluding that Plaintiff's voluntary resignation does not constitute an adverse employment action for purposes of establishing a discrimination or retaliation claim under the ADA and in recommending dismissal of those claims as they relate to the resignation.

### 2. June 30, 2020, Written Reprimand

Plaintiff also objects to the Magistrate Judge's finding that "the written reprimand does not present an adverse employment action . . . ." (Doc. 29 at 14.) Plaintiff argues that "[t]he written reprimand was not an isolated event" because "it was part of a pattern of retaliatory conduct that culminated in Plaintiff's forced resignation." (Doc. 30 at 3.) The Court agrees with the Magistrate Judge's analysis that the written reprimand does not constitute an actionable adverse employment action here.

In 2024, the Supreme Court decided *Muldrow v. City of St. Louis*, 601 U.S. 346 (2024), "in which it clarified a plaintiff's required showing for an adverse

employment action under the anti-discrimination provision of Title VII" and "explained that a plaintiff 'need show only some injury respecting her employment terms or conditions,' or, in other words, a 'disadvantageous change in an employment term or condition.'" *Davis v. Orange Cnty.*, No. 23-12759, 2024 WL 3507722, at *3 (11th Cir. July 23, 2024) (per curiam) (quoting *Muldrow*, 601 U.S. at 354, 359). A plaintiff need no longer show that "an injury . . . constitute[s] significant, serious, or substantial harm." *Id.* (citing *Muldrow*, 601 U.S. at 355).

While yet to be addressed by the Eleventh Circuit in the ADA discrimination context, other circuits have applied *Muldrow* to ADA discrimination claims, *see, e.g.*, *Rios v. Centerra Grp. LLC*, 106 F.4th 101, 112 n.4 (1st Cir. 2024), and in *Davis*, the Eleventh Circuit extended *Muldrow* to ADA retaliation claims. *Davis*, 2024 WL 3507722, at *4 (citation omitted) (stating that "we use the same framework to evaluate Title VII, ADA, and [Fair Credit Reporting Act] claims"). The Court chooses to apply the *Muldrow* some injury standard here.

Here, Plaintiff has not shown that the written reprimand resulted in "some injury." *See Bennett v. Butler Cnty. Bd. of Educ.*, No. 18-cv-01061-RAH, 2025 WL 27598, at *3 (M.D. Ala. Jan. 3, 2025) (stating that "[w]hile *Muldrow* has lowered a plaintiff's burden, *Muldrow* did not change a plaintiff's obligation of presenting actual evidence of 'some injury' when viewed by the reasonable person standard; that is, an objective standard based on the evidence" (citations omitted)). In fact, Kelvin Kendrick, the Executive Director for Defendant's Department of Public Safety, did not accept or treat Plaintiff's reprimand as official "because of the serious nature of the allegations." (Doc. 19-3 at 1–2.)

To the extent Plaintiff argues that the reprimand constitutes an adverse employment action because it is part of a pattern of retaliatory conduct, that argument lacks merit. "[D]iscrete acts . . . must be challenged as separate statutory

8

discrimination and retaliation claims."[3] *McCann*, 526 F.3d at 1379 (citing *McCann v. Mobile Cnty. Pers. Bd.*, No. 05-0364, 2006 WL 1867486, at *19–20 (11th Cir. July 6, 2006)). The Supreme Court has "repeatedly interpreted the term [employment] 'practice' to apply to a discrete act of single 'occurrence,' even when it has a connection to other acts." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 111 (2002).

Accordingly, Plaintiff's Objection is due to be overruled, and the Recommendation adopted in concluding that Plaintiff has not shown the written reprimand to constitute an actionable adverse employment action for purposes of establishing a discrimination or retaliation claim under the ADA and in recommending dismissal of those claims as they relate to the reprimand.

### 3. September 2, 2020, Schedule Change[4]

#### a. Disparate Treatment Claim

Plaintiff objects to the Magistrate Judge's findings that (1) Plaintiff's disparate treatment claim fails because he did not show that his disability was the but-for cause of his schedule change and (2) Plaintiff's retaliation claim fails because he failed to satisfy the "very close" proximity standard for causation. Plaintiff also objects because (1) "[t]he Magistrate Judge accepted Defendant's justifications for the adverse actions without adequately addressing evidence of pretext" and (2) ignored "evidence that other officers were not subjected to similar schedule changes." (Doc. 30 at 7–8.)

---

[3] For the same reason, Plaintiff's Objection that "[t]he Magistrate Judge analyzed each alleged adverse action in isolation, failing to consider the cumulative effect of the Defendant's conduct on Plaintiff's working conditions," (doc. 30 at 5), is overruled.

[4] At the outset, the Court notes that the Magistrate Judge declined to address whether the schedule change constitutes an adverse employment action. While Plaintiff may satisfy but-for causation through comparators, his claims are unavailing because he fails to establish that Defendant's proffered justifications are pretextual. Thus, the Court also need not decide whether the schedule change constitutes an adverse employment action.

Assuming the existence of the other factors necessary for making a prima facie case, the *McDonnell Douglas* framework "requires a plaintiff . . . to prove that he was treated less favorable than a similarly situated, non-disabled person." *Akridge*, 93 F.4th at 1194 (cleaned up) (quoting *Sailboat Bend Saber Living, LLC v. City of Fort Lauderdale*, 46 F.4th 1268, 1275–76 (11th Cir. 2022)). A valid comparator must be "similarly situated in all material respects." *Lewis*, 918 F.3d at 1224. This standard does *not* require a plaintiff to offer an employment-doppelganger except for the protected characteristic. *Id.* at 1226–27. Comparators do not have to have the same job title or exactly the same job responsibilities—the relevant inquiry is whether the employer subjected the comparator and plaintiff to different employment policies. *Id.* at 1227 (citing *Lathem v. Dep't of Children & Youth Servs.*, 172 F.3d 786, 793 (11th Cir. 1999)). Similarly situated employees typically exhibit the following characteristics: (1) "engaged in the same basic conduct (or misconduct) as the plaintiff"; (2) "been subject to the same employment policy, guideline, or rule as the plaintiff"; (3) "been under the jurisdiction of the same supervisor as the plaintiff"; and (4) "share the plaintiff's employment or disciplinary history." *Id.* at 1227–28.

Although the Magistrate Judge concluded otherwise, the Court agrees with Plaintiff that he presented sufficient evidence that his disability was the but-for cause of the September 2, 2020, schedule change when examined against several proffered comparators. While approximately six months transpired between Plaintiff notifying Defendant of his disability on March 11, 2020, and the schedule change on September 2, 2020, Plaintiff has presented sworn witness statements and other evidence concerning five proffered comparators. Two of them are sufficiently similar, and three are not.

Alan Ashley's witness statement relates to "a promotion test . . . administered on or around February 28, 2020," (doc. 23-6), which predates Defendant learning of

10

Plaintiff's disability; Lamont Cobb's witness statement relates to his role as Plaintiff's supervisor, (doc. 23-30), and does not state whether or not he was treated more favorably than Defendant; and William Johnson's witness statement makes no mention that he received more favorable treatment and only that he "resigned [his] position because of the hostile work environment and the constant harassment by [his] supervisor," (Doc. 23-32).  As such, they are not sufficiently similar.

Willie Felder and Linell Tarver, Jr., however, are sufficiently similar, as both individuals were officers who both state that they left the dispatch area unattended and were not terminated.  (Doc. 23-29; Doc. 23-31.)  Although Felder received a reprimand for doing so, it is unclear if Tarver also received one.  Notably, they both aver that they engaged in the same misconduct; i.e., leaving the dispatch area unattended, and that it was a common practice to do so.  In addition, Felder states that he had the same supervisor as Plaintiff—Stoney Davis.  Tarver's statement asserts that he was employed by Defendant for about ten years, which is the same approximate length of time as Plaintiff, who was initially employed in March 2011.  As a result, these two comparators are sufficient, and therefore may be used to establish a prima facie case for disparate treatment.[5]

While that may be enough to show a prima facie case, that does not end the inquiry because Plaintiff must still rebut Defendant's proffered justification for the schedule change.  Plaintiff has not done so here.

Even though Plaintiff may establish a prime facie case under *McDonnell Douglas*, once Defendant provides a "legitimate, non-discriminatory reason" for the schedule change, Plaintiff must show that it "is pretext for discrimination." *Akridge*, 93 F.4th at 1191 (citing *Todd*, 998 F.3d at 1216).  The defendant's burden is

---

[5] Establishing a prima facie case would also require determining the schedule change to be an adverse employment action. *See Frazier-White*, 818 F.3d at 1258 (citing *Lucas*, 257 F.3d at 1255). The Court assumes it meets this element.

"exceedingly light," *Perryman v. Johnson Prods. Co.*, 698 F.2d 1138, 1142 (11th Cir. 1983), and may offer a reason "that might motivate a reasonable employer," *Chapman v. AI Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2000).

Defendant's position is that the schedule change occurred based upon "the number of officers we had working the shift" and "the needs of the department" given that Defendant's Department of Public Safety "is open every day." (Doc. 19-3 at 3–4.) The Court finds that such a reason is legitimate and non-discriminatory.

Plaintiff carries the burden in showing that this reason was pretextual. *See Akridge*, 93. F.4th at 1191 (citing *Todd*, 998 F.3d at 1216). He must show "that the reason was false, *and* that discrimination was the real reason." *Id.* at 1196 (quoting *Ring v. Boca Ciega Yacht Club Inc.*, 4 F.4th 1149, 1163 (11th Cir. 2021) (alteration in original). At this stage, if Plaintiff fails to "present concrete evidence in the form of specific facts which show that the defendant's proffered reason is mere pretext," Defendant is entitled to summary judgment. *Early v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990).

Plaintiff asserts "that other officers were not subjected to similar schedule changes . . . under comparable circumstances." (Doc. 30 at 8.) However, Plaintiff fails to present sufficient evidence that rebuts Defendant's proffered justification for the schedule change and, as a result, cannot establish that it was pretextual. Accordingly, Plaintiff's Objections are overruled, and the Recommendation is adopted to the extent the Magistrate Judge recommended dismissal of Plaintiff's disparate treatment claim as it relates to the schedule change.

### b. Retaliation Claim

As for Plaintiff's retaliation claim, i.e., the schedule change was in retaliation for the grievance he filed on June 25, 2020, the claim also must satisfy but-for causation. *See Frazier-White*, 818 F.3d at 1258 (citing *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 361–62 (2013)). In addition, as with the disparate treatment

claim, "a comparator analysis must be conducted [at the third prong of] the prima facie stage of the *McDonnell Douglas* framework—and not relegated to the pretext phase." *Lewis*, 918 F.3d at 1224 (cleaned up).

As he did with the discrimination claim, Plaintiff objects to the Magistrate Judge's finding that "the change in schedule . . . fails to meet the 'very close' proximity required to satisfy the causation standard for retaliation." (Doc. 29 at 16.) While temporal proximity may satisfy but-for causation, *see Brungart v. BellSouth Telecomms., Inc.*, 231 F.3d 791, 799 (11th Cir. 2000) (citations omitted), "temporal proximity between an employer's knowledge of protected activity and an adverse employment action . . . must be 'very close'" where temporal proximity is the *only* evidence of causality. *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (per curiam) (citation omitted). A plaintiff may rely on circumstantial evidence, including and in addition to temporal proximity, to demonstrate an employer's retaliatory motive behind an adverse employment action. *See, e.g., Indigo Room, Inc. v. City of Fort Myers*, 589 F. App'x 938, 947 (11th Cir. 2014) (per curiam) (citing *Brungart*, 231 F.3d at 798–800).

Here, Plaintiff not only relies on temporal proximity—approximately two months between the grievance on June 25, 2020, and the schedule change on September 2, 2020—but also on the Fielder and Tarver witness statements that show other officers employed by Defendant also left the dispatch area unattended but were not terminated, although Fielder likewise received a reprimand. Notably, neither Fielder nor Tarver state that they were subjected to a schedule change. As a result, Plaintiff has sufficiently established a prima facie ADA retaliation claim as it relates to the schedule change, but as with Plaintiff's disparate treatment claim, he does not present sufficient evidence rebutting Defendant's proffered reason for the schedule change. Accordingly, the Recommendation is adopted to the extent the Magistrate

Judge recommended dismissal of Plaintiff's ADA retaliation claim related to the schedule change.

### 4. Association Discrimination Claim

Plaintiff objects to the Magistrate Judge's dismissal of Plaintiff's association discrimination claim because "the evidence of record simply is not sufficient to suggest that [knowledge of the disability of Plaintiff's son] was a 'determining factor' in the schedule change." (Doc. 29 at 18.)

Under the ADA, an employer is prohibited from "excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association." 42 U.S.C. § 12112(b)(4). To establish a prima facie case for association discrimination, a plaintiff must show (1) he was subjected to an adverse employment action; (2) he was qualified for the job at that time; (3) his employer knew at that time that he had a relative with a disability; and (4) the adverse employment action occurred under circumstances which raised a reasonable inference that the disability of the relative was a determining factor in the employer's decision. *Wascura v. City of South Miami*, 257 F.3d 1238, 1242 (11th Cir. 2001) (cleaned up) (quoting *Hilburn v. Murata Elecs. N. Am., Inc.*, 181 F.3d 1220, 1230–31 (11th Cir. 1999)).

Assuming that Defendant knew Plaintiff had a relative with a disability and that Plaintiff can establish a prima facie case of association discrimination like he does with his discrimination and retaliation claims, Plaintiff's claim nevertheless fails because he does not present sufficient evidence that the proffered reason for the schedule change was pretextual. Accordingly, Plaintiff's Objection is overruled, and the Recommendation is adopted to the extent the Magistrate Judge recommended dismissal of Plaintiff's association discrimination claim.

### 5.  Failure-to-Accommodate Claim

Plaintiff objects to the Magistrate Judge's finding that he failed to exhaust his failure-to-accommodate claim and for not "adequately addressing whether Defendant failed to engage in the interactive process to accommodate Plaintiff's disability." (Doc. 30 at 8.)  The Court agrees with the Magistrate Judge's finding that, even construed liberally, Plaintiff failed to properly allege a failure-to-accommodate claim in either the Complaint or Charge of Discrimination.  Neither document makes any mention of a requested accommodation.  The Court declines to permit Plaintiff to amend or assert new claims in opposition to summary judgment.  *See Gilmour*, 382 F.3d at 1315 (citation omitted).  Accordingly, Plaintiff's Objection is overruled, and the Recommendation is adopted to the extent the Magistrate Judge recommended dismissal of Plaintiff's failure-to-accommodate claim.

### 6.  Convincing Mosaic Standard

Plaintiff may also establish his ADA claims[6] under the convincing mosaic standard.  A plaintiff's mosaic may include "(1) suspicious timing, ambiguous statements …, and other bits and pieces from which an inference of discriminatory intent might be drawn; (2) systemically better treatment of similarly situated employees; and (3) evidence that the employer's justification is pretextual." *Akridge*, 93 F.4th at 1198 (internal quotation marks omitted) (quoting *Lewis II*, 934 F.3d at 1185).

Here, Plaintiff also fails to meet this standard.  While, as noted above, he presents some evidence of better treatment of at least two similarly situated

---

[6] The Eleventh Circuit has yet to decide whether the convincing mosaic standard applies to retaliation cases.  *See Bailey v. Metro Ambulance Servs., Inc.*, 992 F.3d 1265, 1273 n.1 (11th Cir. 2021) (per curiam).

15

employees, the record is devoid of any other circumstantial evidence that might support Plaintiff's claims under the convincing mosaic theory. Accordingly, Plaintiff's ADA claims as they relate to the schedule change also fail under a convincing mosaic theory.

### C. FMLA Retaliation

The Magistrate Judge determined that in the Complaint "there is no allegation that reasonably can be interpreted as an attempt to assert an FMLA claim" and stated that Plaintiff "would be unable to satisfy the 'but-for' causation standard applied under the FMLA." (Doc. 29 at 7 n.3 (citing *Lapham v. Walgreen Co.*, 88 F.4th 879, 894 (11th Cir. 2023).) Plaintiff objects because Defendant issued the recommendation for termination "one day after Plaintiff notified Defendant of his intent to take the full 12 weeks of FMLA leave." (Doc. 30 at 8.)

"A prima facie case of retaliation under the FMLA requires a showing that (1) the employee engaged in statutorily protected conduct, (2) the employee suffered an adverse employment action, and (3) there is a causal connection between the two." *Krutzig v. Pulte Home Corp.*, 602 F.3d 1231, 1234 (11th Cir. 2010) (citing *Smith v. BellSouth Telecomms., Inc.*, 273 F.3d 1303, 1314 (11th Cir. 2001)).

As noted above with respect to Plaintiff's ADA disparate treatment and retaliation claims related to his resignation, Plaintiff's voluntary resignation does not constitute an adverse employment action. As a result, Plaintiff has failed to establish a prima face case for FMLA retaliation. Further, even if Plaintiff established a prima facie case, he still would be unable to prove that Defendant's proffered justification for the recommendation of termination—leaving the dispatch area unattended—is pretextual.[7] Accordingly, Plaintiff's Objection is overruled, and the

---

[7] The Eleventh Circuit applies the *McDonnell Douglas* framework to FMLA retaliation claims. *See, e.g.*, *Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1297 (11th Cir. 2006).

Recommendation is adopted to the extent the Magistrate Judge recommended dismissal of Plaintiff's FMLA retaliation claim.

### D. Chilling Effect

Plaintiff generally objects because "[t]he Magistrate Judge did not consider the chilling effect of Defendant's actions on Plaintiff's ability to exercise his rights under the ADA and FMLA." (Doc. 30 at 9.)  But Plaintiff fails to specifically identify those findings to which he objects.  "[G]eneral objections need not be considered by the" Court. *Marsden v. Moore*, 847 F.2d 1536, 1548 (11th Cir. 1988) (citation omitted); *see also Macort*, 208 F. App'x at 784 ("It is critical that the objection be sufficiently specific and not a general objection to the report." (citation omitted)).  Accordingly, Plaintiff's Objection is overruled.

### E. Plaintiff's Motion to Correct Deposition Transcript

On February 28, 2025, Plaintiff filed a *Motion to Correct Deposition Transcript*, (doc. 31), and a related *Motion to Justify Corrections to Deposition Transcript and Response to Defendant's Opposition*, (doc. 33).  Plaintiff requests "an Order permitting correction of the deposition transcript of his May 24, 2024, deposition . . . and for leave to file an errata sheet to amend the record." (Doc. 31 at 1.)  He asserts that good cause exists for the late corrections because they (1) address material facts; (2) are supported by evidence; and (3) prevent prejudice to the opposing party.  In addition, Plaintiff argues that denial of his Motion would result in manifest injustice.  In response, Defendant contends that allowing Plaintiff "to 'correct' his deposition at this stage in the litigation is prejudicial to [it]" and requests that the Court deny the Motion. (Doc. 32 at 3.)

Under Federal Rule of Civil Procedure Rule 30(e)(1), a party is allowed 30 days by which "to review the transcript or recording" and "if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them." At the outset, the Court notes that the Eleventh Circuit has not yet determined

17

whether substantive changes are permitted under Rule 30(e)(1). Some district courts in the Eleventh Circuit have adopted a broad reading of the rule. *See Cultivos Yadran S.A. v. Rodriguez*, 258 F.R.D. 530, 533 (S.D. Fla. 2009); *United Subcontractors, Inc. v. Darsey*, No. 13-cv-603, 2013 WL 5770559, at *2 (M.D. Fla. Oct. 24, 2013). On the other hand, the Eleventh Circuit has affirmed a district court that applied the stricter test but did not explicitly endorse it. *See Reynolds v. IBM*, 125 F. App'x 982 (11th Cir. 2004). Regardless, the Court need not decide which test to use as Plaintiff failed to request leave to submit an amended errata sheet within 30 days as required under Rule 30(e)(1). The Court also notes that the Magistrate Judge granted Plaintiff's *Motion for Supplement to the Record* on August 5, 2024, (doc. 27), and Plaintiff failed to request leave to file an errata sheet to amend the record at that time. Accordingly, Plaintiff's Motions are due to be denied.

## CONCLUSION

For the foregoing reasons, it is **ORDERED** as follows:

1. The Recommendation (doc. 29) is **ADOPTED**.
2. Defendant's *Motion for Summary Judgment* (doc. 17) is **GRANTED**.
3. Plaintiff's *Motion to Correct Deposition Transcript* (doc. 31) and *Motion to Justify Corrections to Deposition Transcript and Response to Defendant's Opposition* (doc. 33) are **DENIED**.

DONE, on this the 27th day of March 2025.

R. AUSTIN HUFFAKER, JR.
UNITED STATES DISTRICT JUDGE